**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

PRIME TOWER DEVELOPMENT, LLC,

    Plaintiff,

             v.

CLAYTON COUNTY, GEORGIA; BOARD OF
COMMISSIONERS OF CLAYTON COUNTY,
GEORGIA; COMMISSIONERS OF CLAYTON
COUNTY, GEORGIA; and MEMBERS OF THE
BOARD OF COMMISSIONERS OF CLAYTON
COUNTY, GEORGIA,

    Defendants.

Civil Action No.
1:19-cv-02587-SDG

## <u>ORDER</u>

This matter is before the Court on the motion for judgment on the pleadings

filed by Defendants Clayton County, Georgia; Board of Commissioners of Clayton

County, Georgia; and Members of the Board of Commissioners of Clayton County,

Georgia[ECF 16]. For the following reasons, Defendants' motion is **DENIED**.

## I.    BACKGROUND

The Court treats the well-pleaded facts alleged in the Complaint as true and views them in a light most favorable to Prime Tower as the nonmoving party.[1] Prime Tower is an independent owner and operator of wireless infrastructures and provides site development and leasing services for wireless providers licensed by the Federal Communications Commission.[2] To provide these wireless services, Prime Tower must maintain a network of antenna facilities, with each facility serving the immediately surrounding geographic area.[3] To fill gaps in wireless coverage areas, Prime Tower must install new telecommunication facilities.[4]

On February 5, 2019, Prime Tower filed a conditional use permit application ("CUP Application") and Zoning Variance Application ("Variance") for the construction of a wireless telecommunication facility on a parcel of land located in Jonesboro, Clayton County, Georgia (the "Property").[5] As part of the CUP Application, Prime Tower applied to erect a 184-foot high monopole on the

---

[1]    *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005).

[2]    ECF 1, ¶ 14.

[3]    *Id*. ¶ 15.

[4]    *Id*. ¶ 16–17.

[5]    *Id*. ¶¶ 26, 36.

Property.[6] On March 20, 2019, Prime Tower's representatives and legal counsel attended a community information meeting to provide the public with information regarding its CUP Application.[7] Subsequently, the Planning and Zoning Division of the Clayton County Department of Community Development reviewed the CUP Application and recommended the Board of Commissioners of Clayton County ("Board") approve it.[8] On April 1, 2019, the County Zoning Advisory Group held a public hearing on the CUP Application and likewise voted to recommend approval of the CUP Application to the Board.[9]

On April 16, 2019, the Board held a public hearing and considered the CUP Application.[10] During the public hearing, the Board heard a presentation from Prime Tower's representatives and received input from two private citizens, as well as its own legal counsel.[11] The Board, its legal counsel, and Prime Tower's representatives discussed, among other things, Clayton County's setback

---

[6]   *Id*. ¶ 30.

[7]   *Id*. ¶ 45.

[8]   *Id*. ¶ 47–48.

[9]   *Id*. ¶¶ 50–52.

[10]  *Id*. ¶ 52.

[11]  *Id*. ¶ 54. *See also* ECF 13, at 1:25:00–1:54:00 (videotape of Board hearing on CUP Application).

requirements and Prime Tower's efforts to satisfy these requirements, including its pursuit of the still-pending Variance application.[12] After a question-and-answer exchange, the Board unanimously voted to deny the CUP Application.[13] The Board did not consider the Variance application, as the Clayton County Board of Zoning Appeals had already scheduled a hearing on the Variance for April 18, 2019.[14]

On May 10, 2019, Prime Tower received a letter from Defendants, dated May 6, 2019, advising it that the Board voted to deny its CUP Application at the April 16, 2019 Board meeting.[15] The letter did not cite evidence or offer a reason for why the Board denied the CUP Application.[16]

On June 5, 2019, Prime Tower filed its Complaint, asserting four claims against Defendants and seeking judicial review of Defendants' denial of its CUP Application pursuant to 47 U.S.C. § 332(c)(7)(B)(v).[17] In Count I, Prime Tower asserts a claim for lack of substantial evidence pursuant to § 332(c)(7)(B)(iii).[18]

---

[12]   ECF 1, ¶¶ 56–57, 61–64.

[13]   *Id*. ¶ 67.

[14]   *Id*. ¶ 61, 64.

[15]   *Id*. ¶ 70. *See also* ECF 1-4.

[16]   ECF 1-4.

[17]   *See generally* ECF 1.

[18]   ECF 1, ¶¶ 75–83.

Prime Tower alleges Defendants failed to support their decision to deny the CUP Application in writing with substantial evidence in a written record.[19] In Count II, Prime Tower asserts a claim for the prohibition of wireless services pursuant to § 332(c)(7)(B)(i)(II).[20] Prime Tower alleges Defendants' denial of its CUP Application prevents it from providing necessary wireless services and closing coverage gaps in the wireless network.[21] In Count III, Prime Tower seeks an appeal of Defendants' denial of its CUP Application under Clayton County's Code of Ordinances.[22] In Count IV, Prime Tower seeks certiorari relief.[23]

On September 30, 2019, Defendants filed the instant motion for judgment on the pleadings.[24] On October 15, 2019, Prime Tower filed its response in opposition to Defendants' motion.[25] Defendants did not file a reply.

---

[19]   *Id.* ¶ 79.

[20]   *Id.* ¶¶ 84–90.

[21]   *Id.*

[22]   *Id.* ¶¶ 92–93.

[23]   *Id.* ¶¶ 94–104.

[24]   ECF 16-1.

[25]   ECF 24.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) states that a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The Court analyzes a motion for judgment on the pleadings using "the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018)). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). The Court should grant the motion if "it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint." *King*, 775 F. App'x at 620 (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)).

## III.    DISCUSSION

### A.     Prime Tower's Claim for Lack of Substantial Evidence (Count I)

Prime Tower asserts Defendants failed to support their denial of its CUP Application in writing with substantial evidence in a written record.[26] Defendants,

---

[26]   ECF 1, ¶¶ 79–83.

naturally, disagree and argue they supported their decision with substantial record evidence.

### i.    Background of the Telecommunication Act of 1996

Congress enacted the TCA "to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." *Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210, 1214 (11th Cir. 2002). Congress intended the TCA "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." *Id*.

In particular, Congress recognized ongoing issues regarding the construction of telecommunication facilities. Congress found that "zoning decisions by state and local governments [ ] created an inconsistent array of requirements, which inhibited both the deployment of personal communications services and the rebuilding of a digital technology-based cellular telecommunications network." *Id*. In an effort to strike a balance between competing interests, the TCA "generally preserves the traditional authority of

state and local governments to regulate the location, construction, and modification of wireless communications facilities like cell phone towers, but imposes specific limitations on that authority." *T-Mobile S., LLC v. City of Roswell, Ga.*, 574 U.S. 293, 300 (2015) (citing *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005)). Congress codified these limitations at 47 U.S.C. § 332(c)(7)(B).

One of these limitations provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). "Substantial evidence" is defined as "more than a mere scintilla but less than a preponderance." *Mun. Commc'ns, LLC v. Cobb Cty., Georgia*, 796 F. App'x 663, 669 (11th Cir. 2020) (citing *Michael Linet, Inc. v. Vill. Of Wellington, Fla.*, 408 F.3d 757, 762 (11th Cir. 2005)). While a state or local government must explain the rationale for its decision in writing, "there is no specific requirement regarding the format that writing must take, and a locality can rely on a detailed hearing transcript in order to support its decision." *Mun. Commc'ns*, 796 F. App'x at 668–69 (citing *T-Mobile S.*, 574 U.S. at 303). To determine if a locality supported its denial with substantial evidence, "courts must be able to identify the reason or reasons why the locality denied the application." *T-Mobile S.*, 574 U.S. at 300. While these

"reasons need not be elaborate or even sophisticated," they must be "clear enough to enable judicial review." *Id*.

An individual or entity adversely affected by a final action of a state or local government may bring an action in the district court within 30 days. 47 U.S.C. § 332(c)(7)(B)(v). "By structuring the TCA in this manner, Congress explicitly preserved local zoning authority over the siting of wireless facilities, while permitting judicial oversight as to the manner in which such decisions are made." *Preferred Sites*, 296 F.3d at 1215–16.

### B. Defendants Did Not Support Their Decision in Writing with Substantial Evidence Contained in a Written Record.

Defendants argue Prime Tower's claim fails as a matter of law because they supported their decision to deny the CUP Application in writing with substantial evidence in a written record. Defendants contend they denied the CUP Application because "the height of the tower did not meet the [Clayton] County Code's setback requirement."[27] Put another way, Defendants contend Prime Tower intended to erect a 184-foot tower on a proposed site located less than 184-feet from the property line in violation of a Clayton County ordinance.[28]

---

[27]   ECF 16-1, at 7.

[28]   *Id*. at 8.

Defendants informed Prime Tower of the denial in three ways: (1) a written letter; (2) the written minutes of the April 16, 2019 meeting at which the Board denied the CUP Application; and (3) a videotape recording of the April 16, 2019 Board meeting.[29]

The written letter and minutes from the April 16, 2019 Board meeting, both attached to Prime Tower's Complaint, are insufficient to meet the standard demanded by the TCA. First, the Board's letter, dated May 6, 2019, provides no reasoning for the Board's denial.[30] Instead, the letter simply states "[a]fter careful consideration at [the] meeting, the Board of Commissioners voted to deny the application."[31] Likewise, the minutes of the April 16, 2019 Board meeting are devoid of any rationale for the Board's decision.[32] Instead, the written minutes merely indicate a Commissioner made a motion to deny the CUP Application, which the Board subsequently approved unanimously.[33] While these denials are "in writing," they are simply pro forma. The documents do not cite a single piece of evidence or provide any justification for why the Board denied Prime Tower's

---

[29]   ECF 16-1, at 8.

[30]   ECF 1-4.

[31]   *Id.*

[32]   ECF 1-5, at 12.

[33]   *Id.*

CUP Application. Since Defendants failed to justify their decision in these documents, the Court cannot engage in any meaningful judicial review. Thus, this evidence is insufficient for Defendants to satisfy their obligation under the TCA. *Vantage Tower Grp., LLC v. Chatham Cty.-Savannah Metro. Planning Comm'n*, No. 4:13-cv-258, 2015 WL 300257, at *4 (S.D. Ga. Jan. 20, 2015) ("Here, the Letter did not provide any reasons for its decision. Although the City did provide minutes of the February 20, 2014, meeting, those minutes do not reveal why the City denied Vantage's application. It is difficult—if not impossible—for the Court to determine whether the City has violated the substantive provisions of the TCA because the City did not state its reasons for its decision.") (internal punctuation omitted).

The final piece of evidence put forward by Defendants—a videotape recording of the April 16, 2019 Board meeting—warrants further discussion. As a threshold matter, Defendants' reliance on a videotape raises an issue as to what constitutes a decision "in writing" for purposes of § 332(c)(7)(B)(iii). The Eleventh Circuit has not answered this precise question. However, the Supreme Court and other federal district and appellate courts have offered persuasive guidance. Based on the analysis below, the Court finds that Defendants' attempt to satisfy its burden by providing a videotape of the Board meeting is insufficient.

As stated above, 47 U.S.C. § 332(c)(7)(B)(iii) requires a locality's decision to deny the construction of a personal wireless facility to "be in writing and supported by substantial evidence contained in a written record." In *T-Mobile, South*, the Supreme Court afforded a locality substantial flexibility and latitude in satisfying the TCA's "substantial evidence" requirement. 574 U.S. at 303. While a locality must provide "reasons when they deny cell phone tower siting applications," it is not required to "provide those reasons in written denial letters or notices themselves." *Id.* at 307. Instead, a locality satisfies its "statutory obligations if it states its reasons with sufficient clarity in some other written record issued essentially contemporaneously with the denial." *Id.* (noting that "the City provided its reasons in writing and did so in the acceptable form of detailed minutes of the City Council meeting"). Nonetheless, the Supreme Court emphasized that "the text and structure of the Act render it inescapable that localities must provide reasons *in writing* when they deny applications." *Id.* (emphasis added). In fact, the Court held that "[o]ther than providing that a locality's reasons must be given *in writing*, nothing in that text imposes any requirement that the reasons be given in any particular form." *Id.* at 302–03 (emphasis added).

While not directly confronting this issue, the Eleventh Circuit has stated that "[p]utting the decision in writing is the last action the authority is statutorily required to take." *Preferred Sites*, 296 F.3d at 1217. Similarly, in *T-Mobile Northeast LLC v. City of Wilmington, Delaware*, the Third Circuit agreed, stating that "the statutory text makes it clear that, if a denial is not in writing, there is something left for the agency to do." 913 F.3d 311, 319 (3d Cir. 2019). According to the Third Circuit, a written document is required, as "a locality's oral declaration of a denial is of a merely tentative or interlocutory nature." *Id.*

At least three district courts have faced this precise issue. In *GTE Mobilnet of California Limited Partnership v. City of Watsonville*, the Central District of California held that the "plain meaning of the Supreme Court's language therefore presumes that 'in writing' follows its plain meaning." No. 16-cv-03987 NC, 2016 WL 9211684, at *2 (N.D. Cal. Nov. 1, 2016). The Central District of California found "no authority suggesting a video alone constitutes a writing for purposes of the statute," and that "some sort of printed writing with words is required." *Id.* Thus, that court held that "the video of the city council's meeting fails to constitute a writing." *Id.*

Likewise, in *Vertical Assets, LLC v. City of Panama City Board of Commissioners*, the Northern District of Florida rejected the defendant's attempt to use a videotape

of a board meeting to satisfy the TCA's "in writing" requirement. No. 5:13-cv-342-RS-CJK, 2014 WL 12589622, at *4 (N.D. Fla. Feb. 13, 2014). That court declined to accept the defendant's argument that the plaintiff had access to the videotape and "could have transcribed the video recording to create a written record." *Id*. Instead, that court held that "[i]t is not [p]laintiff's responsibility to create the written record," and the defendant violated the TCA "because the reasons, grounds, or explanation of [d]efendant's denial are not contained in the written record." *Id*.

Conversely, in *Northeast Colorado Cellular, Inc. v. City of North Platte*, the District of Nebraska concluded that the purposes of the statute were served by considering the contents of the video-recorded hearing. No. 4:14-cv-3088, 2015 WL 3513963, at *4 (D. Neb. June 4, 2015). Importantly, that court premised its decision on the fact that "the City has not objected to the Court's review of the recording, and has stipulated to its authenticity." *Id*. Here, Prime Tower objects to Defendants' attempt to use the videotape to satisfy the "in writing" requirement of the TCA. This important fact distinguishes this case from *Northeast Colorado Cellular*, and in any event, this Court respectfully disagrees with that decision.

The Court finds Defendants' videotape is insufficient to satisfy its burden under the TCA. The text of the statute specifically requires Defendants' decision to be produced "in writing." To allow Defendants to justify their decision through

an unwritten medium would be to render the phrase "in writing" superfluous. The Court must, if possible, avoid this result. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."); *In re Shek*, 947 F.3d 770, 777 (11th Cir. 2020) ("Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant.").

Notably, even if the Court did consider the videotape, this evidence is wholly inconclusive. The videotape shows that, during the meeting, the Board heard an oral presentation from Prime Tower's representatives in support of its application.[34] The Board also heard concerns from two private citizens and posed several questions to Prime Tower's representatives and its own legal counsel.[35] To be sure, the Board discussed both the height of Prime Tower's proposed tower and Clayton County's set-back requirements as potential issues. However, the Board also considered and voiced numerous other points of contention, including concerns for the public health and safety, the proposed tower's structural integrity, the environment, visual aesthetics, increased or decreased wireless access,

---

[34] ECF 13, at 1:25:00–1:54:00.

[35] *Id.*

insurance, and radio frequency emissions.[36] Any or all of these issues could have figured into the Board's ultimate decision to deny the CUP Application. Based on these competing rationales, and Defendants' subsequent boilerplate explanations, Defendants' reasons have not been stated clearly enough to enable the Court to conduct a meaningful judicial review. *T-Mobile S.*, 574 U.S. at 303. Thus, the Court finds Defendants cannot satisfy the "in writing" requirement of the TCA by sending Prime Tower a videotape of the Board meeting.

### C. The "Harmless Error" Doctrine Does Not Change the Result at this Stage.

As a final argument, Defendants contend that, even if the denial letter, minutes of the Board meeting and videotape do not satisfy the TCA's "substantial evidence" requirements, the Court should grant their motion because in any event their failure constituted a "harmless error."[37]

The "harmless error" rule, codified at 28 U.S.C. § 2111, states that "[o]n the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." This rule "seeks to prevent appellate

---

[36]   *Id.*

[37]   ECF 16-1.

courts from becoming impregnable citadels of technicality." *Shinseki v. Sanders*, 556

U.S. 396, 407 (2009). Defendants evoke Justice Alito's concurring opinion in

*T-Mobile, South*, 574 U.S. at 309. According to Justice Alito:

> First, a court must uphold a decision of less than ideal
> clarity if the agency's path may reasonably be
> discerned. . . . Second, even if a locality has erred, a court
> must not invalidate the locality's decision if the error was
> harmless. In administrative law, as in federal civil and
> criminal litigation, there is a harmless error rule. Here,
> for instance, I have trouble believing that T-Mobile
> South, LLC—which actively participated in the
> decisionmaking process, including going so far as to
> transcribe the public hearing—was prejudiced by the city
> of Roswell's delay in providing a copy of the minutes.

*Id.* at 308–09 (internal citations omitted). The majority, however, expressly

declined to consider the potential applicability of the "harmless error" rule,

instead requiring the Eleventh Circuit to address the issue on remand. *Id.* at 308.

Defendants' argument here, however, misconstrues the "harmless error"

principal. First, in *T-Mobile, South*, the Supreme Court raised the principle in

discussing the appropriate ***remedy*** for a court to order after the resolution of a

motion for summary judgment. *Id.* at 308–09. The Court did not suggest the

principle offers a locality *de facto* immunity at the pleading stage before reaching

the merits of the case. Regardless, binding Eleventh Circuit precedent forecloses

Defendants' argument, as the appropriate remedy for a successful claim based on

the violation of the "substantial evidence" rule is "an injunction ordering issuance of a permit." *Preferred Sites*, 296 F.3d at 1222.

Second, the facts here are sufficiently distinct from those in *T-Mobile, South*. There, the Supreme Court found the defendant locality erred by failing to put its decision in writing, even though the aggrieved party may have been aware of the basis for the denial. 574 U.S. at 308–09. Here, the Court cannot make such a finding as to Prime Tower's knowledge at this early stage of the litigation. Moreover, Defendants' error—the failure to support their decision in writing with substantial evidence in the first place—is not simply a procedural defect; rather, it prohibits this Court from engaging in a meaningful judicial review of the locality's decision. *See Verizon Wireless of the E., L.P. v. Columbia Cty.*, Ga., No. CV 114-211, 2015 WL 1877452, at *16 (S.D. Ga. Apr. 23, 2015). Thus, Defendants' reliance on the "harmless error" rule is unavailing.

Defendants are not entitled to the dismissal of Count I.

### D.    Prime Tower's Claim for Prohibition of Wireless Services (Count II)

Defendants contend Count II must be dismissed because: (1) the Eleventh Circuit has not yet addressed whether a locality can violate the "effective prohibition" clause of the TCA by preventing a wireless provider from closing a

significant gap in wireless coverage; and (2) Defendants' good faith application of its own ordinances cannot serve as a basis for violation of the TCA.[38]

47 U.S.C. § 332(c)(7)(B)(i)(II) states:

> The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

"Whether a particular zoning decision violates the TCA's anti-prohibition clause is a question that a federal district court determines in the first instance without any deference to the local zoning board." *Powertel/Atlanta, Inc. v. City of Clarkston*, No. 1:05-cv-3068 RWS, 2007 WL 2258720, at *4 (N.D. Ga. Aug. 3, 2007) (citing *VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818, 833 (7th Cir. 2003)).

Defendants are correct that the Eleventh Circuit has not yet considered the standard required to establish a violation of the TCA's anti-prohibition clause. Nonetheless, this Court has recognized that "even in the absence of a general ban on wireless services, state or local governments may effectively prohibit the provision of wireless services in violation of the TCA by preventing a wireless

---

[38]   ECF 16-1, at 10–11.

provider from closing a significant gap in service coverage." *T-Mobile S. LLC v. City of Milton*, No. 1:10-cv-1638-RWS, 2015 WL 13687970, at *4 (N.D. Ga. Nov. 2, 2015) (citing *Powertel*, 2007 WL 2258720, at *4 (collecting cases)).

In *Powertel*, this Court examined numerous decisions from other federal appellate courts and articulated three general rules that have garnered a consensus:

> First, all courts agree that not every gap in service is "significant" within the meaning of the TCA. Thus, decisions by state and local governments which result in *de minimis* denials of service do not constitute effective prohibitions on the provision of wireless services for purposes of the TCA. . . . Second, these courts agree that the "significant gap" inquiry is highly-fact intensive . . . . And third, it is the provider's burden to establish the existence of a significant gap in service.

*Powertel*, 2007 WL 2258720, at *5.

To determine if the denial of an application amounts to an effective prohibition of service, at least one court in this district has adopted the two-part test set forth by the Sixth Circuit in *T–Mobile Center, LLC v. Charter Township of West Bloomfield*, 691 F.3d 794 (6th Cir. 2012). *TowerCom V, LLC v. City of Coll. Park, GA*, No. 1:13-cv-530-SCJ, 2013 WL 4714203, at *8 (N.D. Ga. Aug. 21, 2013). In *T-Mobile Center*, the Sixth Circuit held that a plaintiff must provide "(1) a showing of a 'significant gap' in service coverage and (2) some inquiry into the feasibility of

alternative facilities or site locations." 691 F.3d at 805. The second prong of the effective prohibition analysis "require[s] the provider to show that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve." *Id*. at 808. A provider satisfies the "least intrusive" standard by making "a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives." *Id*. A provider may demonstrate a "good faith effort" by presenting evidence that it identified, investigated, and ruled out potential alternative sites. *Id*. The Court finds the Sixth Circuit's test persuasive and adopts it in this case.

Based on this framework, Defendants' motion is without merit. Defendants' sole reliance on a "good faith application of [Clayton County's] own ordinances" does not immunize their decision from challenge. As noted in *Powertel*, the highly fact-intensive nature of this claim means the parties' arguments are best suited for resolution by a finder of fact or on a motion for summary judgment.

Therefore, Defendants are not entitled to the dismissal of Count II.

## E. Prime Tower's Request for an Appeal Under the Clayton County Zoning Ordinances (Count III) and Certiorari Relief (Count IV)

In Counts III and IV, Prime Tower asserts two claims under Georgia state law, requesting that this Court review Defendants' decision to deny its CUP Application. Count III is based on Section 13.18 of the Clayton County Code of

Ordinances, which states: "Appeals of any decision to deny or grant a conditional use permit shall be filed within thirty (30) days by filing an appeal to superior court." For Count IV, O.C.G.A. § 5-4-1(a) dictates the appropriate circumstances for the issuance of a writ of certiorari:

> The writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers, including the judge of the probate court, except in cases touching the probate of wills, granting letters testamentary, and of administration.

*Id*. Put another way, Prime Tower is essentially asking this Court to exercise appellate review over the Board's zoning decision.

O.C.G.A. § 5-4-3 provides specific instructions to parties seeking a writ of certiorari:

> When either party in any case in any inferior judicatory or before any person exercising judicial powers is dissatisfied with the decision or judgment in the case, the party may apply for and obtain a writ of certiorari by petition to the superior court for the county in which the case was tried, in which petition he shall plainly and distinctly set forth the errors complained of. On the filing of the petition in the office of the clerk of the superior court, with the sanction of the appropriate judge endorsed thereon, together with the bond or affidavit . . . it shall be the duty of the clerk to issue a writ of certiorari, directed to the tribunal or person whose decision or judgment is the subject matter of complaint, requiring the tribunal or person to certify and send up all the

proceedings in the case to the superior court, as directed
in the writ of certiorari.

Defendants argue Prime Tower's state law claims must be dismissed because the
Court lacks jurisdiction to hear them. According to Defendants, Prime Tower "did
not comply with the procedures in the [Clayton] County Ordinance or O.C.G.A.
§ 5-4-1 because it never appealed to a Georgia superior court."[39] Essentially,
Defendants assert the Clayton County Ordinance and O.C.G.A. § 5-4-1 compel a
sole remedy: an appeal to a Georgia superior court.

Prime Tower disagrees and frames this issue as one falling under the Court's
exercise of supplemental jurisdiction under 28 U.S.C. § 1367. According to Prime
Tower, an appeal to a Georgia superior court is not the sole remedy and this Court
has jurisdiction to hear these state law disputes as part of the same case or
controversy as asserted in its claims under federal law.

In support of dismissal, Defendants rely solely on the Court's decision in
*Cheshire Bridge Holdings, LLC v. City of Atlanta, Georgia*, No. 1:15-cv-3148-TWT, 2018
WL 279288, at *7 (N.D. Ga. Jan. 3, 2018), *aff'd in part, vacated in part, rev'd in part*,
777 F. App'x 310 (11th Cir. 2019). There, the Court treated O.C.G.A. § 5-4-1 as a *de
facto* jurisdictional bar to the exercise of federal jurisdiction. *Id*. The Court held that

---

"O.C.G.A. § 5-4-1 *et seq.* lays out a specific process for seeking a writ of certiorari in Georgia," which necessarily includes a petition to a Georgia superior court. *Id.* Since the plaintiffs had "done none of these things, nor have they made any argument or cited to any authority to suggest that these procedures may be done away with in this case," the Court granted defendant's motion for summary judgment. *Id.*

While the Court in *Cheshire Bridge* seemingly treated O.C.G.A. § 5-4-1 as an exclusive state remedy, the decision is not as broad as Defendants portray. Notably, the plaintiff there did not argue that the Court possessed supplemental jurisdiction over the state law claim. Instead, as the Eleventh Circuit noted on appeal, the plaintiff "did not respond to that portion [concerning a writ of certiorari] of the motion" and thereby waived the claim, including any argument for the application of federal procedural law. *Cheshire Bridge Holdings*, 777 F. App'x at 323. Given its limited nature, *Cheshire Bridge* does not act as a bar to the adjudication of the claims presented here.

The Court finds no other case law that categorically prohibits it from hearing these claims in the first instance without Prime Tower having first resorted to a Georgia superior court. *Cf. Servicemaster Mgmt. Servs. Corp. v. Cherokee Cty. Sch. Sys.*, 629 F. Supp. 896, 897 (N.D. Ga. 1986) ("The appeal to the State Board of

Education can be bypassed, with appeal directly to the appropriate superior court (or federal district court in a diversity situation), only if the aggrieved party proceeds by writ of certiorari under [O.C.G.A] § 5–4–3 *et seq.*").

In contrast to *Cheshire Bridge*, Prime Tower points to the Court's statutory authority to exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367(a) is applicable here because the Court has original jurisdiction over Prime Tower's claims arising under the TCA, a federal statute. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Section 1367(a) permits a Court to "hear supplemental [state law] claims to the full extent allowed by the case or controversy standard of Article III of the Constitution." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742–43 (11th Cir. 2006) (citing *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1566 (11th Cir. 1994)). The "case or controversy" standard "confers supplemental jurisdiction

over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim." *Parker*, 468 F.3d at 743 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).

In this case, Prime Tower's federal and state law claims arise out of a common nucleus of operate facts. All claims concern Defendants' decision to deny Prime Tower's CUP Application. None of the discretionary factors in § 1367(c) warrant the Court declining to extend supplemental jurisdiction over these claims. Instead, to decline jurisdiction here would be to create duplicative, parallel litigation between the parties. This would unnecessarily waste private and judicial resources, as well as create the risk of inconsistent verdicts.

Thus, in light of this Order denying Defendants' motion for judgment on the pleadings as to Prime Tower's federal claims, the Court finds it is appropriate to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and adjudicate all claims between the parties relating to the same case or controversy in a single forum.

Therefore, Defendants are not entitled to the dismissal of Counts III and IV.

## IV.   CONCLUSION

Defendants' motion for judgment on the pleadings [ECF 16] is **DENIED**. Pursuant to the Court's October 16, 2019 Order, the parties shall file their

respective initial disclosures and the joint preliminary report and discovery plan within 14 days after entry of this Order. Discovery shall commence 30 days after entry of this Order.

**SO ORDERED** this the 19th day of May 2020.

_____
Steven D. Grimberg
United States District Court Judge